## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**SARKIS KAVLAKIAN,**                                            Chapter 7
    Debtor                                            Case No. 06-11280-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are the "Assented to Motion to Allow Counsel for Mohamad A. Mohamad Be Paid Fees and Expenses" (the "Assented to Motion"), and the "Administrative Application for Legal Fees for Stephen Gordon Counsel for Mohamad" (the "Application").  The Chapter 7 Trustee, Sarkis Kavlakian (the "Debtor"), both individually and in his capacity as Trustee of the 671 Main Street Realty Trust,  as well as the beneficiaries of that Trust, objected to the Application filed by Stephen Gordon ("Attorney Gordon").  The Court heard the matters on March 20, 2013 and afforded the parties an opportunity to file supplemental briefs on the issues raised at the hearing.

The facts necessary to determine the matters can be discerned from the records of this Court, as well as published decisions from the Worcester Superior Court, Department of the Massachusetts Trial Court, and the Appeals Court.  Unfortunately, neither counsel to Mohamad nor the Trustee provided the Court with a cogent synopsis of the lengthy and

complex history of the dispute involving the Debtor, Mohamad, and Emanuel Landsman ("Landsman") to enable this Court to determine whether Attorney Gordon uncovered assets which were unknown to the Trustee. Accordingly, this Court has relied extensively upon the decisions of state courts to set forth the material facts. Those facts are not in dispute, however, and none of the parties requested an evidentiary hearing.

The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. BACKGROUND[1]

On May 5, 2006, the Debtor filed a Chapter 7 petition.[2] The United States trustee appointed Stewart F. Grossman, Esq. the Chapter 7 Trustee. Early in the case, numerous adversary proceedings were commenced by and against the Trustee, the Debtor and a creditor, Mohamad A. Mohamad ("Mohamad"), who at all times has been represented by Attorney Gordon.[3] A complaint filed by the Trustee resulted in the denial of the Debtor's

---

[1] The Court may take judicial notice of its docket. *See* In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

[2] The Debtor filed a Chapter 13 petition on May 25, 2004 (Case No. 04-14456-CJK). That case was dismissed pursuant to 11 U.S.C. § 109(g) on June 29, 2004 because the Debtor had failed to file Schedules, a Statement of Financial Affairs, and a Chapter 13 plan.

[3] For example, on July 28, 2006, Mohamad filed a "Complaint Objecting to the Discharge of the Debtor, in which he referenced the purchase of property located at 56 Webb Street, Lexington, Massachusetts in 1986, title to which was held by the Kavlakian Family Trust. Mohamad sought the denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), (D), (a)(5), and (a)(7), as well as the exception to

discharge on March 29, 2007.  On April 10, 2007, the Court issued a "Notice of Denial of

Discharge."

Mohamad's status as a creditor of the Debtor preceded the filing of the Debtor's

petition by several years.  Mohamad obtained a default judgment against the Debtor in

2004.  The Superior Court in <u>Mohamad v. Landsman</u>, No. 2003-01416-B, 2008 WL 4926166

(Mass. Super. Oct. 10, 2008),  succinctly summarized the tortuous background of how

Mohamad's debt arose and his efforts to collect his judgment:

> On or about September 14, 1993, Contempt Defendant Emanuel E. Landsman
> ("Landsman") loaned Driveway Auto, Inc. ("Driveway Auto"), though [sic]
> its president and treasurer, Michael R. Forrest ("Forrest") the sum of
> $270,000.00 for the purchase of a parcel of commercial property and gas
> station located at 671 Main Street, Winchester, Massachusetts (the
> "Property"). . . .
>
>  On that same date Forrest executed a promissory note ("Forrest Note") in
> the principal amount of $270,000.00 to Landsman, secured by a mortgage on
> the Property. . . .
>
> Pursuant to the terms of the Forrest Note, Forrest was to make monthly
> payments to Landsman at a rate of 8.75%, in the amount of $2,124.09. A final

---

discharge of an obligation resulting from a judgment under Mass. Gen. Laws ch. 93A.
Less than two weeks later, on August 8, 2006, the Debtor filed a complaint against
Attorney Gordon and others, with respect to a capias issued for the Debtor's arrest,
which complaint was dismissed on December 5, 2006.  Shortly thereafter, on September
19, 2006, the Chapter 7 Trustee filed a complaint, later amended, against the Debtor and
others, seeking the avoidance of a fraudulent transfer relating to the Kavlakian Family
Trust and the property located at 56 Webb Street, Lexington, Massachusetts, which
complaint was eventually dismissed pursuant to a Stipulation of Dismissal.

On January 12, 2007, the Trustee filed a complaint seeking the denial of the
Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3); on March 29, 2007, the Court
entered a default judgment against the Debtor, denying his discharge, in the adversary
proceeding commenced by the Trustee.

balloon payment on the remaining principal and interest was due on
September 14, 1996. Forrest did not comply with the terms of the Note . . .
and ceased making any payments whatsoever to Landsman by 2002. . . .

Landsman was then approached by Defendant Sarkis Kavlakian
("Kavlakian") who offered to pay him $295,000.00 at a rate of 7.00%,
pursuant to the terms of a promissory note ("Kavlakian Note") in exchange
for Landsman's assigning him the Landsman Mortgage. Kavlakian sought
to run the gas station on the Property by foreclosing on Forrest, based on
Driveway Auto's default on the Forrest Note. . . .

On December 31, 2002, Kavlakian Executed the Kavlakian Note, an
Assignment of Real Estate to Landsman and an Escrow Agreement. The
Kavlakian Note called for the payment of $295,000.00 to be paid in monthly
installments of $1,961.75 to Landsman beginning on May 1, 2003 with a final
balloon payment due on May 1, 2006. The assignment to Kavlakian of the
Landsman Mortgage was thereafter recorded . . .

The terms of the agreement between Landsman and Kavlakian were
memorialized in a document entitled "Escrow Agreement." The escrow
agent was Landsman's attorney, George Foote. In relevant part, the Escrow
Agreement provided that in the event of a default by Kavlakian the escrow
agent would be entitled immediately to record an "Assignment Back" of the
mortgage to Landsman once again, as holder of the Landsman Mortgage. .
. .

The default provision of the Kavlakian Note provided Kavlakian would be
in default upon failure to pay in full "any installments within thirty (30) days
from the date it becomes due or upon failure to perform any security
agreement, or any guaranty given as security for this note." . . .

During the term of the Kavlakian Note, Kavlakian was more than 30 days
late on his payments to Landsman on numerous occasions, and had
otherwise defaulted on the terms of the Kavlakian Note and Escrow
Agreement. . . .

Notwithstanding his questionable performance on the Kavlakian Note,
Kavlakian negotiated an agreement with Plaintiff here, Mohamad, to lease
Mohamad the Property subject to certain contingencies. In furtherance of the
agreement, Mohamad paid Kavlakian $40,000.00 as a deposit. When the
contingencies were not met, Mohamad demanded the return of the

$40,000.00 deposit, which Kavlakian failed to return. . . .

On or about July 17, 2003 Mohamad filed a civil action in the Worcester Superior Court against Kavlakian, individually, and as Trustee of the 671 Main Street Realty Trust. Civil Action No. WOCV2003-01416 ("the Civil Complaint"), together with an Ex Parte Motion for Real Estate Attachment. The Motion for Real Estate Attachment was allowed (McCann, J.), on that same date in the amount of $40,000. Landsman, Forrest and Driveway Auto were not named parties to the Civil Complaint. . . .

Kavlakian failed to answer the Civil Complaint, and Mohamad then took steps to obtain a Default and Default Judgment. On or about March 16, 2004, Mohamad obtained a Judgment against Kavlakian individually, and 671 Main Street Realty Trust through Kavlakian as Trustee, for breach of contract and violations of G.L.c. 93A, for Kavlakian's failure to return the $40,000.00 deposit to Mohamad and failure to lease the Property to him. . . .

On March 16, 2004 this court (Agnes, J.), ordered that "[P]laintiff shall recover of the defendants double damages under G .L. 93A on $44,500.00 in the sum of $89,000.00, plus interest on $44,500.00 from 4/28/03 at the rate of 12% in the sum of $4,725.58, attorneys fees to be later determined by the Court and its costs of action as provided by law." Id. On May 7, 2004 an award entered for $4,290.00 in attorneys fees. . . .

 On June 1, 2004, in an effort to satisfy the judgment(s), Mohamad filed an Ex Parte Motion to Reach and Apply Proceeds of a Mortgage Pursuant to the Court's Equitable Powers and Mass. R. Civ. P. 69. The Court (Billings, J.) entered an order that same day granting Plaintiff's Ex-Parte Motion to Reach and Apply ("the June 1, 2004 Order"). . . .

The June 1, 2004 Order ("Order") provided as follows: "Driveway Auto Inc is to make all payments due on the mortgage dated 9/14/93 and the note secured by the same to the Clerk of the Worcester Superior Court pending further Order of this Court." . . .

*The purpose of the June 1, 2004 Order, and thus its design, was to reach and apply the assets of judgment debtor, Kavlakian. At the time of the June 1, 2004 Order, Kavlakian did not hold an interest in the Property, but he was entitled to the proceeds of the Landsman Mortgage. . . .*

Landsman was not served with the June 1, 2004 Order, and was never made

5

a party to the Civil Complaint. . . .

On or about June 8, 2004, Executions issued against Kavlakian individually and 671 Main Street Realty Trust in the amount of $101,247.55 including interest and costs. . . .

Landsman's counsel Mr. Foote saw a copy of the June 1, 2004 Order by June 29, 2004. He reviewed it and talked to Landsman about it. . . .

***

On June 29, 2004, Mr. Foote recorded the Assignment Back to Landsman of the 9/14/93 Mortgage . . .

***

In or around October 2004, Attorney Michael Feinman, as counsel for Driveway Auto and Forrest contacted Mr. Foote, to discuss the payoff of the Landsman Mortgage. . . .

The proposed purchase price for the Property was $500,000.00. The full claimed amounts on all of the liens totaled approximately $690,000.00. . . .

Mr. Feinman requested Landsman accept $235,000.00 in satisfaction of the Landsman Mortgage, and thus the debt owed by Kavlakian on the Landsman Note, in lieu of the full amount of $328,694.36. Through Mr. Foote Landsman agreed. Landsman authorized Mr. Foote to compromise his lien amount on the Landsman Mortgage and to execute the discharge of the Landsman Mortgage. . . .

The sale of the Property closed on November 19, 2004 for a total sale price of $500,000.00. The escrow agent for the sale transferred the agreed-upon $235,000 to Mr. Foote from the proceeds. Landsman received a check dated November 24, 2004 in the amount of $235,000 from the sale proceeds, and deposited that amount to his personal funds. The discharge of the Landsman Mortgage was recorded on November 24, 2004. . . .

On or about November 16, 2004 Mohamad filed a Motion to Reach and Apply Proceeds of a Mortgage held by 671 Main Street Realty Trust on the land owned by Driveway Auto, Inc. The Motion was allowed by the court (Kern, J.) on November 29, 2004. . . .

6

Mr. Feinman did not discuss the June 1, 2004 Order with any party, or direct any portion of his clients' payoff to the Clerk of the Worcester Superior Court. . . .

Landsman had no role in the sale or establishment of the sale price for the Property, other than accepting less than was due to him along with the other lienholders. . . .

On December 3, 2004 Mr. Gordon mailed a letter and a copy of a November 29, 2004 Reach and Apply Order he had obtained from the court with respect to Driveway Auto's interest in the Property to Mr. Foote and Mr. Feinman, advising them not to disburse the proceeds of the Landsman Mortgage. However the closing had already taken place, and the funds had been disbursed on November 24, 2004. . . .

***

On or about January 6, 2005, Mohamad filed this Complaint for Civil Contempt against Landsman. . . .

As of November 24, 2004, Mohamad was due in excess of $100,000 pursuant to the June 1, 2004 Order, including pre- and postjudgment interest and costs. . . .

Mohamad v. Landsman, 2008 WL 4926166 at *1-4 (emphasis supplied, footnotes omitted).

As noted above, Mohamad filed a contempt complaint against Landsman on January 6, 2005.  Approximately six months later, the Superior Court dismissed Mohamad's civil contempt complaint against Landsman. *See* Mohamad v. Kavlakian, 15 Mass. L. Rptr. 527, 2005 WL 1812290 (Mass. Super. June 21,  2005).[4]  On appeal, however, the Appeals Court

---

[4] The Superior Court noted that Mohamad argued that the June 1, 2004 order allowing his Reach and Apply Motion constituted an equitable lien on the property located at 671 Main Street, such that the proceeds of the  sale should not have been distributed without prior court authorization.  2005 WL 1812290 at *3.  The Superior Court in its June 21, 2005 decision determined that the June 1, 2004 order did not apply to Landsman and, therefore, he could not be held in contempt.

7

reversed the Superior Court in a decision dated June 4, 2007. *See* Mohamad v. Kavlakian, 69 Mass. App. Ct. 261, 261-62 (Mass. Super. 2007).

On the same day as the decision of the Appeals Court, June 4, 2007, and after the denial of the Debtor's discharge, Mohamad filed in this Court a "Motion for Instructions" requesting this Court to provide instructions to the Worcester Superior Court in which he asserted in pertinent part the following:

> The debtor effectively convinced the Superior Court that the bankruptcy proceedings ousted the Superior Court of jurisdiction over the debtor. Part of the debtor's argument to the Superior Court was that because there was a bankruptcy estate and certain assets were held by or under the control of the Bankruptcy Trustee, the Superior Court did not have the power or jurisdiction to make any orders that the defendant/debtor pay Mohamad the money that is undeniably owed. While there may be some assets that belong to the bankruptcy estate and are under the control or within the possession of the Bankruptcy Trustee, this does not oust the Superior Court from jurisdiction over Kavlakian, especially where his discharge has been denied.

> The debtor has effectively dodged payment of the Execution by having previously filed a bankruptcy petition with this Court that was dismissed and also by failing to produce documents and materials in the Superior Court action so as to enable Mohamad to ascertain the debtor's true financial circumstances. The debtor is now playing the same game with the Superior Court as he did before and is attempting to intimidate the Superior Court into relinquishing or giving up its authority and power over this defendant/debtor based upon claims that the Bankruptcy Court supersedes the Bankruptcy Court [sic] even though the discharge has been denied.

> As a result of the debtor's arguments to the Superior Court, the examination of the debtor on May 21, 2007 was suspended and the court instructed counsel to obtain instructions from the Bankruptcy Court. The hearing has been continued to Monday, July 23, 2007 at 2:00 p.m.

The Chapter 7 Trustee filed a Response to Mohamad's Motion for Instructions, referencing Mohamad's Renewed Complaint for Civil Contempt against the Debtor in the Worcester

8

Superior Court, captioned <u>Mohamad v. Kavlakian</u>, Superior Court Case No. WOCV 2003-01416, requesting that "Mohamad be required to advise the Trustee immediately upon any collection from the Debtor and/or upon any payment toward amounts awarded to Mohamad in the State Court Action," and observing the following:

> [P]ursuant to § 362(c)(1) of the Bankruptcy Code, the automatic stay remains in effect against the collection by Mohamad of property of the bankruptcy estate, and will continue until such property is no longer property of the bankruptcy estate (i.e. until either the property is specifically abandoned or the bankruptcy case is closed). The Trustee has not abandoned any property of the bankruptcy estate, and the bankruptcy case remains open.

On June 20, 2007, this Court entered an order in which it determined that Mohamad could pursue litigation against the Debtor because his discharge had been denied, determined that the automatic stay remained in effect as to property of the bankruptcy estate, and directed the Trustee to enter an appearance in the state court action.

On January 30, 2008, Attorney Gordon filed the Assented to Motion, requesting an order permitting him "to be paid fees and reimbursed costs incurred . . . to the extent such fees and costs benefit the bankruptcy estate," citing 11 U.S.C. § 503(b)(3)(B) and (b)(4).  In his Assented to Motion, Attorney Gordon stated, in pertinent part, the following:

> The contempts were reinstated and are pending in the Worcester Superior Court, with further hearing dates scheduled. While the Trust is a separate entity from Mr. Kavlakian and not a party to the bankruptcy, it may turn out that after counsel for Mohamad has satisfied the execution against the 671 Main Street Realty Trust, that there may be funds which may be payable to the Chapter 7 bankruptcy estate as property of the Debtor, Sarkis Kavlakian.

> To date, in order to be able to pursue the contempt in the Superior Court, counsel for Mohamad underwent a preliminary hearing in the Superior Court. The Superior Court judge dismissed the contempts. After an appeal

9

to the Massachusetts Appeals Court, the dismissal was unanimously reversed and returned to the Superior Court with the instructions that the contempt was to go forward. Counsel for Mohamad believes that Mohamad has a more than reasonable chance of prevailing on the contempt proceeding.

Attorney Gordon contended that he was "entitled to an administrative expense recovery of fees and expenses to the extent of benefit to the bankruptcy estate, *solely to be paid out of assets that he discovers and that are not currently known to the Trustee.*" (emphasis supplied).

This Court heard the Motion on March 12, 2008 and determined that the Assented to Motion was not ripe for determination.  The Court continued the Assented to Motion generally.  The Trustee did not attend the hearing, and, other than the words "Assented to" in the caption, he set forth no position vis à vis the Assented to Motion, either verbally or in writing, in this Court.

The complaint for contempt against Landsman was tried in the Worcester Superior Court on May 8 and 9, 2008.  On October 10, 2008, the Superior Court held Landsman in civil contempt.  It found, among other things, that 1) "[t]he language of the June 1, 2004 Order does not contemplate an equitable lien or attachment with respect to the Property itself, but rather a seizure of the first, [sic] Landsman Mortgage proceeds only," *see* 2008 WL 4926166 at *7; 2) that "[t]he Order did not enjoin Forrest or Driveway Auto from selling the Property, id.; ;" 3) that "[t]he amount that should have been deposited into escrow with the Clerk's Office no later than November 24, 2004 by either Forrest/Driveway Auto or Landsman was not the $328,000 alleged by Mohamad, but rather Landsman's compromised receivable of $235,000, id.; and 4) that "[t]he amount due Mohamad from any

10

escrow as of November 24, 2004, the date of Landsman's contempt, was the (single, not double) full amount stated in the Execution(s), plus postjudgment interest on the Execution(s) amount, at the statutory per diem rate as of that date." Id.

Pursuant to its October 10, 2008 decision, the Superior Court, in addition to holding Landsman in contempt, ordered him to deposit with the Clerk of the Superior Court, within 10 days, the sum of $235,000, representing the receipts from the proceeds of the mortgage (which had been done). The court also ruled that Mohamad was entitled to reasonable attorney's fees from Landsman for prosecution of the contempt complaint. On December 23, 2008, the Superior Court awarded Attorney Gordon $41,720 in fees and $700.09 in costs. See Mohamad v. Landsman, No. 200301416B, 2008 WL 5505475 (Mass. Super. Dec. 23, 2008).

According to the Superior Court in Mohamad v. Kavlakian, No. WOCV200301416, 2011 WL 1366658 (Mass. Super. Feb. 16, 2011), Landsman deposited $235,000 with the court on October 8, 2008. The court stated:

> On November 18, 2008, this court, in an amended judgment, ordered that Landsman deposit $235,000 with this court (which he had already done), and that the plaintiff recover from Landsman "the sum of $101,247.55 pursuant to the execution on June 8, 2004" against Kavlakian. The court also ordered Landsman to pay $5,625.53 in interest from the date of the reach and apply order (June 1, 2004) to the date of Landsman's contempt (November 24, 2004), as well as an additional $51,088.71 in interest from the date of contempt to the date of this court's contempt order. Landsman appealed.
>
> On March 16, 2010, in an unpublished opinion, the Appeals Court affirmed this court's ruling, holding that the judge properly "saw no merit in Landsman's claim to be the holder in due course of the mortgage and to have superior rights to the plaintiffs," based on the facts that the reassignment of

11

the mortgage was neither perfected nor recorded at the time of the reach and apply order and that Landsman had knowledge of the June 1, 2004 court order when he attempted to record the assignment back. Mohamad, 76 Mass.App.Ct. at *1. The Appeals Court further agreed that the award of post-judgment interest on the amount the plaintiff could have obtained from the sale proceeds as of November 24, 2004 was an "appropriate compensatory contempt fine." Id., at *2.

On April 27, 2010, this court ordered that the plaintiff recover from Landsman $157,961.79, which was comprised of the $101,247.55 owed by Kavlakian, plus the $56,714.24 in interest that this court had awarded. This court also imposed another $27,316.81 in additional post-judgment interest and costs. *Based on this order, on May 3, 2010, this court issued an execution against Landsman for $184,491.39. On the same date, Landsman paid this entire amount to the plaintiff from his own funds.*

2011 WL 1366658 at * 2-3 (emphasis supplied).

On May 14, 2010, Mohamad, with the assent of the Trustee, filed an "Assented to Motion for Order Granting Relief from Automatic Stay, Re: $235,000 held by the Worcester County Superior Court Clerk's Office" in which Mohamad alleged that he was the holder of a secured claim in this case by virtue of an equitable attachment issued by the Worcester Superior Court on June 1, 2004 (an argument at odds with the Superior Court's ruling), adding that, on October 9, 2008, with a contempt trial imminent Emanuel Landsman who had wrongfully received funds that were subject to the June 1, 2004 order, deposited $235,000 into the Worcester Superior Clerk's Office.[5]  In his Motion for Relief from Stay, Mohamad stated that the Appeals Court determined that Landsman did not have any rights to the $235,000, finding that the purported assignment back from Kavlakian was

---

[5]  As noted above, the contempt trial was held on May 8 and 9, 2008. On October 10, 2008, the Superior Court found Landsman in contempt and ordered him  to deposit $235,000 in proceeds of the Landsman Mortgage.

12

neither perfected nor recorded at the time of the court order [of June 1, 2004].[6] *See*

Mohamad v. Kavlakian, 76 Mass. App. Ct. 1119, 922 N.E.2d 864, 2010 WL 909911 at * 1

(March 16, 2010) (emphasis supplied).[7] He added:

> Mohamad is the only creditor with secured interest in the $235,000.
>
> Mohamad is asking that this court issue an order to the Worcester Superior Court Clerk's Office that the sum of $181,278.60 plus interest of $51.45 per day to the date of the issuance of the check by the Clerk be paid to Stephen Gordon as counsel for Mohamad.
>
> Mohamad is asking that the balance of funds on deposit with the Worcester Superior Court Clerk's Office, after the payment on Mohamad's behalf be paid to the Trustee, Stewart F. Grossman, pending further order of this court.

Mohamad's position was notable in that he continued to assert that he held "a second and

several execution against the 671 Main Street Realty Trust" and was due in excess of

$360,000.

Landsman filed an Objection to the Motion, in which he admitted depositing

---

[6] The Appeals Court stated:

> It is evident from the judge's decision that she explicitly considered and rejected Landsman's *priority argument*, finding that the assignment back from Kavlakian was neither perfected nor recorded at the time of the court order and that both Landsman and his counsel had actual knowledge of the court order when they attempted to record the assignment back.

76 Mass. App. Ct. 1119, 2010 WL 909911 at *1.

[7] Mohamad filed a cross-appeal from the judgment against Landsman, as well as a cross appeal with respect to the dismissal of contempt complaint against a junior mortgagee on the property and its attorney. The Appeals Court determined that Landsman was not prohibited from compromising the amount of the mortgage when the property was sold and the liens exceeded the sales price. Id. at *3.

13

$235,000 in the Worcester Superior Court Clerk's Office, adding that on or about April 3,

2010 [sic] he made payment to Mohamad in full satisfaction of the debt owed to Mohamad

by the Debtor, adding that the Debtor and/or the Trustee have no claim or right to the

money held in the Superior Court.

The Debtor, individually, and as Trustee of the 671 Main Street Realty Trust,

together with the other beneficiaries of the Trust, also filed an Objection to the Motion for

Relief from Stay, asserting that Landsman paid Mohamad's judgment in the sum of

$184,491.29.

The Court heard the Assented to Motion for Relief from Stay and the Objection on

June 10, 2010 and deemed it a contested matter.[8]  Following the filing of a motion for

summary judgment, the Court, on August 9, 2010, entered the following order:

> Upon consideration of the motion, objections, exhibits, arguments of counsel,
> the record of proceedings in this case, the Worcester Superior Court civil

---

[8] At the hearing, counsel to the Trustee stated the following:

Let me start by telling you why I'm here and why I care, which is that
there's $235,000 that's been put up. It seems clear to me that that money
represents money that was owed to Sarkis Kavlakian on the petition date
in 2006, as well as property of the estate. It's also clear to me it's sufficient
equitable lien. [sic] The lien is only about $185,000. There's excess
proceeds that I believe belong to the estate.

Counsel to the Trustee summarized his position: "It's just like what any secured
creditor would do at a foreclosure."  The Trustee was aware that Landsman had made
payment to Mohamad.  His counsel stated:  "In a sense I'm agnostic as far as whether
the Superior Court decides whether it's Mohamad's lien or whether somehow the
payment that Landsman made changes things. But either way, there's excess proceeds,
and that should not be decided in the Superior Court."

14

action between the moving party and the Debtor, and the proceedings in the Massachusetts Appeals Court between the parties, the Court grants the motion for summary judgment and grants relief from stay to Mohamad A. Mohamed ("Mohamad") to permit him to proceed in the Worcester Superior Court to enforce his rights in the funds held on deposit in the Worcester Superior Court in the action <u>Mohamad v. Kavlakian</u>, WOCV2003-01416. Mohamed has demonstrated that he has a colorable secured claim in at least the amount of $190,000 in this case and an equitable lien on the funds held in the Worcester Superior Court. Mohamad has filed a proof of claim in this case, to which no objection has been filed, and that proof of claim is entitled to prima facie validity. Counsel to the trustee represents that he has investigated the claim and that it is a valid secured claim to the extent of at least $190,000. The Court further approves the agreement between the moving party and the Chapter 7 trustee that the balance of the funds after payment of $190,000 to the moving party shall be paid to the bankruptcy estate. The objecting parties have failed to rebut the prima facie validity of Mohamad's claim, or to show that they have a valid claim to the funds. The Massachusetts Appeals Court affirmed the Worcester Superior Court's judgment and ruling that Emanuel Landsman did not have rights in the funds superior to the claims of the moving party and rejected Landsman's arguments which he reiterates in this contested matter. Moreover, in the Worcester Superior Court, judgment was entered against the 671 Main Street Realty Trust (the "Trust"), and the Trust has no claim to the funds on deposit in Worcester Superior Court.

On February 16, 2011, the Superior Court issued an Amended Memorandum with respect to Landsman's Motion to Intervene. *See* <u>Mohamad v. Kavlakian</u>, No. WOCV200301416, 2011 WL 1366658 (Mass. Super. Feb. 16, 2011).  It held:

> [T]his court rules that Landsman does not have an interest in the full $235,000 he deposited with the court clerk. This court previously determined that this amount represented a payment under a mortgage Landsman had assigned to Kavlakian, the record holder at the time of the mortgaged property's sale, and therefore were proceeds subject to this court's June 1, 2004 reach and apply order. Landsman, however, does have an interest in $101,247.55 of the $235,000 that he deposited. This is the amount of the judgment entered against Kavlakian that this court ordered could be recovered from Landsman. Due to Landsman's contempt of the reach and apply order, this court also ordered that Landsman personally owed the

plaintiff the additional interest and costs that had accrued to $83,243.84 by May 3, 2010, with the total judgment on that date amounting to $184,491.39. This court expected Landsman to pay the portion of this judgment that comprised the judgment against Kavlakian from the deposited sale proceeds rather than with his own funds. Had Landsman done so, there would be no reason for Landsman to seek intervention.

Accordingly, this court recognizes that Landsman has an interest in $101,247.55 of the deposited $235,000, the amount he paid on Kavlakian's behalf when he paid $184,491.39 to the plaintiff. Nonetheless, there is no present litigation in which to intervene, as the underlying matter was resolved in 2004 upon entry of the default judgment. Given that this case has concluded, including the contempt that brought Landsman into this matter to begin with, there is no legal basis for this court to continue to hold the $235,000. Therefore, this court will release $101,247.55 to Landsman and the remaining balance of the deposited proceeds, specifically $133,752.45, will be released to the Chapter 7 Trustee as this constitutes part of Kavlakian's bankruptcy estate.

2011 WL 1366658 at *3-4.  The court also stated:

This court must also address plaintiff's further contention that he is entitled to further recovery from Kavlakian in this case. He relies upon the two executions issued by this court on June 8, 2004, one naming Kavlakian in his individual capacity, and the other naming Kavlakian in his capacity as trustee of 671 Main Street Realty Trust. Although the plaintiff agrees that Landsman's payment of $184,491.39 satisfied one of these judgments against Kavlakian, he argues that it did not satisfy the other.

In determining whether the plaintiff has a right to recover under the second execution, this court must consider whether it previously ruled that Kavlakian and the trust acted independently of each other so as to make both Kavlakian and the trust independently liable. . . .

[T]his court issued one judgment that was reflected in two executions, which allowed the plaintiff to recover under either execution to satisfy this judgment. Since there is no finding that the trust was acting independently from Kavlakian, it is not appropriate to assume several liability under Chapter 93A.

Id. at *4 (citations omitted).  Mohamad appealed and the Appeals Court affirmed. *See*

16

<u>Mohamad v. Kavlakian</u>, 82 Mass. App. Ct. 1105 (2012).

In its Memorandum and Order dated July 3, 2012, the appellate court stated:

"Mohamad appeals an amended order of the Superior Court denying intervention to

Emanuel Landsman and releasing the sum of $235,000 held by the court pursuant to a

previous order. Mohamad argues that the court's order is 'barred by the doctrines of

collateral estoppel, res judicata or issue or claim preclusion.'" <u>Mohamad v. Kavlakian</u>, 82

Mass. App. Ct. 1105, at *1 (2012).  In his appeal, Mohamad asserted that the motion judge

erred in determining that Landsman personally had satisfied the underlying judgment.

The appeals court set forth the following:

> On appeal, Mohamad concedes that Landsman paid him $184,491.39 from
> his own funds, and that Landsman also deposited $235,000 with the court.
> As the judge noted, the $184,491.39 figure included the $101,247.55 default
> judgment against Kavlakian, plus accrued interest and costs awarded as an
> "appropriate compensatory contempt fine" against Landsman. <u>Mohamad v.
> Landsman</u>, 76 Mass. App. Ct. 1119 (2010). Nevertheless, Mohamad now
> argues that Landsman has no interest in any part of the $235,000 being held
> in escrow, but rather, the entire amount should be released to Kavlakian's
> bankruptcy trustee from whom Mohamad shall be entitled to recover an
> additional $101,247.55 to satisfy the second execution, against 671 Main Street
> Realty Trust (trust), issued on June 8, 2004.

> Mohamad argues two points primarily. First, there were two
> executions—one against Kavlakian personally and one in his capacity as
> trustee of the trust. Therefore, Mohamad reasons, he is entitled to collect
> twice. The judge properly responded that, on the contrary, the "court issued
> one judgment that was reflected in two executions, which allowed the
> plaintiff to recover under either execution. . . . Since there is no finding that
> the trust was acting independently from Kavlakian, it is not appropriate to
> assume several liability."

> Second, Mohamad characterizes the $184,491.39 payment that he received

from Landsman as the "contempt judgment," apparently reasoning that he
was entitled to the full amount as compensation for the contempt, in addition
to payment in full of the judgment. However, as noted, *supra*, the $184,491.39
figure included the $101,247.55 default judgment against Kavlakian, plus
accrued interest and costs described by the judge as an "appropriate
compensatory contempt fine " against Landsman.

In all, the record amply supports the judge's conclusion that she "expected
Landsman to pay the portion of [the default] judgment that comprised the
judgment against Kavlakian from the deposited sale proceeds rather than
with his own funds." Landsman therefore is entitled to be reimbursed from
the deposited sale proceeds held by the court in escrow. In addition, the
August 9, 2010, order of the United States Bankruptcy Court, on which
Mohamad bases his argument that he had an interest in the money held in
escrow, merely "granted the plaintiff relief from stay to permit him to
proceed in [the Superior Court] 'to enforce his rights in the funds held on
deposit' " consisting of approximately $190,000. The judge correctly noted
that the United States Bankruptcy Court decision "did not refer to the fact
that Landsman had already paid the plaintiff $184,491.39 from his own
funds."

82 Mass. App. Ct. 1105 at *1-2 (footnote omitted).  The appellate court in a footnote

observed: "[t]he Chapter 7 trustee of Kavlakian's bankruptcy estate agrees with the

[Superior Court] judge's decision as to distribution of the escrowed funds and filed a brief

in this court supporting the judge's amended order." Id. at *2 n. 4.  The appellate court also

stated:

Finally, the judge concluded that, as there was no longer a pending case,
Landsman could not intervene. However, it was not an abuse of her
discretion to issue a "further order" on the 2004 reach and apply order that
would effect the release of the monies being held in escrow by the Superior
Court. *See* Commonwealth v. Springfield Terminal Ry. Co., 77 Mass.App.Ct.
225, 231 (2010). From those monies, Landsman is entitled to reimbursement
of his $101,247.55 direct payment to Mohamad, which had satisfied fully the
judgment against Kavlakian. *See* Fields v. Paraskis, 318 Mass. 726, 728–729
(1945). To allow Mohamad to collect an additional $101,247.55 from the
escrowed funds would be a windfall, unjustly exceeding the original award.

18

Id. at *2.

On January 16, 2013, Mohamad filed a "Notice of Withdrawal of Claim" in this Court in which he withdrew his proof of claim in the sum of $145,000.

On February 1, 2013, the Trustee filed a Request for Hearing on the Assented to Motion. Shortly thereafter, on March 11, 2013, Attorney Gordon filed an Administrative Application and Affidavit for Legal Fees (the "Application") in which he asserted entitlement to fees and costs for "the substantial contribution for recovering assets for the estate."[9]

## III. THE APPLICATION AND THE POSITIONS OF THE PARTIES

In his Application, Attorney Gordon, in addition to highlighting the contempt proceedings, pointed to the assistance he provided to the Trustee. He stated: "Counsel had uncovered debtors [sic] concealed interests in parcels of real estate, including 30 Beverly Rd [sic] and 20 Church St. and Church 40 Trust and 585 Main St. Trust. The information provided to the trustee was of several trusts the debtor had interests in as well as banking information about the debtor and his dealings."

Attorney Gordon indicated that he spent 104.75 hours at $300 per hour for a total charge of $31,425 for obtaining a reversal of the dismissal of the contempt proceedings. *See* Mohamad v. Kavlakian, 69 Mass. App. Ct. 261 (2007). Attorney Gordon also sought

---

[9] *See* 11 U.S.C. § 503(b)(3)(D), which provides: " . . . there shall be allowed administrative expenses, . . . including (3) compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . (D) a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." Section 503(b)(3)(D) by its express terms does not apply to Chapter 7 cases.

$24,365 for 81.22 hours of time with respect to Landsman's appeal where Landsman argued that he was entitled to have the issue of his contempt retried under a clear and convincing standard.  *See* Mohamad v. Kavlakian, 76 Mass. App. Ct. 1119 (2010).  In addition, Attorney Gordon stated; '[t]he proceedings and collection efforts from May 15, 2004 to January 4, 2005 total 50.75 for a total of $15,275.000," adding that the filing and prosecution of the first contempt from January 6, 2005 involved 42.4 hours of time for a fee of $12,720.  For "other efforts to collect from the debtor and to uncover information regarding assets," he indicated that he spent 4.15 hours for a total of $1,245.

Attorney Gordon asserted:

> My entire assessment of the facts and the law as it applied to Landsman when the contempt was filed against him turned out to be absolutely correct. The Appeals Court accepted fully Mohamad's position and vindicated counsel on appeal.[10]

Attorney Gordon  set forth a litany of generalized services, including 36.9 hours and fees of $11,070 relating to Mohamad's attempt to have the Middlesex Sheriff seize and sell attached assets, and other matters to keep the case alive. He concluded that "[t]he total billing time exceeds $145,000.00." In sum, Attorney Gordon sought "fees in the amount of at least $96,000.00 which represents the time and effort most directly related to securing the funds for the estate."

The Trustee objected, stating:

> The bankruptcy estate has recovered additional funds, and the balance in the estate's bank account is $190,394.13. The Trustee does not believe there will

---

[10] The Court is compelled to observe that this statement is patently untrue.

be any further recoveries.

\*\*\*

First, nothing that is in the bankruptcy estate was "recovered" by Mohamad in the precise sense of being paid to Mohamad or Gordon and then forwarded to the Trustee. All funds in the estate were paid directly to the Trustee. Case law suggests this fact alone is sufficient to defeat any recovery under § 503(b)(3)(B). "[T]he statutory language does not extend to a situation where the action has ultimately resulted in the estate recovering property (because of the creditor's participation or involvement). The statute is limited to situations wherein the creditor is 'a creditor that recovers.' The connection must be direct. The creditor must be the recovering party; extension to situations where the creditor's action indirectly or ultimately leads to the recovery of property is contrary to the statute." In re Courtney, 359 B.R. 883, 888 (Bankr. E.D. Tenn. 2007) (quoting In re Blount, 276 B.R. 753, 763 (Bankr. M.D. La. 2002)).[11]

Second, the recovery under § 503(b)(3)(B) must be "after the court's approval." Here, Gordon did not file the Administrative Expense Motion under January 30, 2008. He has no basis, therefore, to seek fees incurred prior to January 30, 2008, when he could not possibly say he was acting with court approval. . . .

Third, Gordon and Mohamad cannot deny that the primary motivation in the actions they took was to obtain payment of the judgment in favor of Mohamad. Gordon took the leading role in getting Emanual Landsman ("Landsman") to deposit $235,000 into the Superior Court on October 9, 2008. He obtained the Superior Court judgment on November 18, 2008 that Mohamad was entitled to receive $101,247.55 plus interest. He obtained the

---

[11] The Trustee explained:

The primary thrust of the Administrative Expense Application concerns $143,124.03 paid to the bankruptcy estate on August 13, 2012 from the Worcester Superior Court from funds that had been deposited with it. Gordon obtained the order issued on June 1, 2004 that led to the deposit of those funds, and he participated extensively in the events over the next 8 years that led to the payment to the bankruptcy estate. That does not mean he or Mohamad "recovered" the funds.

Appeals Court order on April 14, 2010 [sic] affirming the Superior Court (<u>Mohamad</u> II). He obtained a Superior Court execution in the amount of $184,491.39 ($101,247.55 plus $83,243.84 in interest and costs), and Landsman paid him that amount on May 3, 2010. All of these actions were motivated in getting Mohamad paid, as he was on May 3, 2010.[12]

Finally, it must be noted that Gordon and Mohamad also took actions to the detriment of the estate. The Superior Court entered an order on February 16, 2011 directing the payment of funds to the estate and to Landsman, and finding Mohamad had been paid in full and was not entitled to any further recovery. Gordon, on behalf of Mohamad, appealed that order to the Appeals Court, and only after the Appeals Court entered an order on July 3, 2012 [sic] affirming the Superior Court (<u>Mohamad</u> III) could the Superior Court pay the funds to the Trustee. The prosecution of <u>Mohamad</u> III cost the bankruptcy estate money and time, and was to the detriment of the estate rather than its benefit. For that reason alone, even without all of the other reasons above as to why Gordon is not entitled to any administrative expense, an award of "at least $96,000.00" would not be reasonable based on the time, nature, extent, and value to the estate of such services.

The Debtor, individually and as Trustee, together with the beneficiaries of the 671

Main Street Realty Trust, echoed the Trustee's arguments, stating

As the Trustee correctly asserts, counsel for Mohamad has been motivate [sic] over the years with obtaining payment of a judgment for his client. . . . After being paid $184,491.39 on an initial complaint alleging an amount due of $40,000, Attorney Gordon argued that because he has [sic] two separate executions, he had two separate judgments.  His effort to collect multiple damages was outright rejected by the Massachusetts Super Court, as well as the Massachusetts Appeals Court. <u>See</u> <u>Mohamad A. Mohamad v. Sarkis Kavlakian</u>, 82 Mass. App. Ct. 1105 (2012).

---

[12]The Trustee added:

An award under § 503(b)(3)(B) requires actions that lead to a recovery "for the benefit of the estate". Until the time Mohamad was paid on May 3, 2010, Gordon's actions were taken in order to get a recovery for Mohamad, not for the estate. Thus actions prior to May 3, 2010 cannot fall into the statutory language of § 503(b)(3)(B).

***

> [T]he additional funds were not recovered because of the action of counsel
> for Mohamad, but rather in spite of his efforts to collect. In other words,
> because the Trustee, Landsman, and Kavlakian all objected to Mohamad's
> efforts to collect multiple damages, the Court rules [sic] against Mohamad
> and the additional funds were paid to the Trustee. . . .[13]

In a Supplemental Memorandum, Attorney Gordon stated, without specificity, that

he provided the Trustee with information about the Debtor's assets which the Debtor had

concealed and which he uncovered, adding that the information he provided to the Trustee

enabled the Trustee to recover approximately $80,000 for the estate for which he is not

seeking compensation. In addition, Attorney Gordon referred to his involvement in the

case since its inception and his numerous conversations with counsel to the Trustee,

asserting that he would have "walked away" from the state court matter had the Trustee

not represented that he would be paid for his efforts. Attorney Gordon stated that he

"relied on the fact that he could return for payment when the money was obtained." He

asserted that because the Trustee had no intention of pursuing entitlement to the $235,000

held by the Clerk of the Superior Court, he should be judicially estopped from changing

---

[13] The Debtor and the beneficiaries of the 671 Main Street Trust asserted:

> {T]he additional funds of $190,394.13 belong to the Trust, not the Debtor,
> Kavlakian as an individual. Sarkis Kavlakian, however, is one-third
> beneficiary of the Trust. . . . Therefore, one-third of the additional funds,
> which amounts to $63,464.71 belong in the estate. The remaining funds of
> the $126,929.42 must be released to the Trust.

This issue is not before the Court. Moreover, the Debtor did not list a beneficial interest
in the Trust on Schedule B-Personal Property and none of the other beneficiaries filed
proofs of claim with respect to the 671 Main Street Trust.

his position that Attorney Gordon would be entitled to payment from the bankruptcy estate, adding that "[f]or the trustee to now claim that because somehow the funds came from the clerk's office and not from counsel directly is a complete perversion of the agreement reached . . . ."  Attorney Gordon also contended that the Debtor "did not disclose the asset counsel pursued" in his Schedules.

Attorney Gordon also relied upon the doctrine of promissory estoppel to bar the attempts by the Trustee to avoid paying counsel, as well as unjust enrichment.  He stated that the Trustee and the estate will be unjustly enriched if the Trustee is not estopped from asserting defenses to the payment of his fees, complaining that money not paid to him will be used to pay the Trustee and his counsel.

The Trustee in his Response to Attorney Gordon's brief, maintained that judicial estoppel is inapplicable.  Because judicial estoppel prevents a party from gaining an advantage in litigation by changing theories, the Trustee observed that he has not previously litigated Attorney Gordon's entitlement to an administrative expense, let alone a fee of at least $96,000.  He maintained that his position is not incompatible with the Assented to Motion because any fees payable to Attorney Gordon must benefit the estate. In sum, he argued that Attorney Gordon cannot point to any materials where he was told that his fees and costs would be paid, absent compliance with 11 U.S.C. §503(b)(3)(B) and (b)(4).

In addition, the Trustee maintained that Attorney Gordon cannot be paid any fee prior to January 30, 2008 when the Assented to Motion was filed with the Court as there

could have been no prior court approval prior to that date. He argued that Attorney Gordon must comply with the law as stated in Xifaras v. Morad (In re Morad), 328 B.R. 264 (B.A.P. 1st Cir. 2005), adding that although he assented to the Assented to Motion he did not join it. He asserted he is not judicially estopped from taking a position that would be contrary to the reasoning in the cases contained in the Application.

The Trustee also asserted that promissory estoppel does not apply for similar reasons. The Trustee added that he never discussed with Attorney Gordon the precise amount of compensation that Attorney Gordon might receive and that "if [Attorney] Gordon is awarded the 'at least $96,000' he seeks, then the bankruptcy estate will be administratively insolvent." According to the Trustee,

> None of Gordon's services rendered prior to May 5, 2006, the date of the Debtor's bankruptcy petition, could be entitled to an administrative expense [as no bankruptcy estate existed]. . . .

> None of Gordon's services rendered prior to January 30, 2008, the date of the filing of the Administrative Expense Motion, are entitled to an administrative expense. Nothing in the Administrative Expense Motion asked for *post facto* approval. The burden of proving entitlement to an administrative expense rests with the party requesting it. Xifaras v. Morad, 328 B.R. at 269 (citing Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1, 5 (1st Cir. 1992)). Gordon has not shown that his delay in seeking court approval was the result of extraordinary circumstances. Mohamad I was decided in 2007. Mohamad v. Kavlakian, 69 Mass. App. Ct. 261 (2007).

> Gordon's timesheets submitted to the Court also contain time entries for services incurred after February 16, 2011, when the Superior Court held that the funds it was holding were to be paid to the estate and to Landsman because Mohamad had received payment in full from Landsman and that he was not entitled to any more money. After that date, Gordon's efforts were devoted to reducing the amount of money the bankruptcy estate could get. He surely cannot received [sic] compensation for that.

As a result, although it is not at all clear from the documents submitted by Gordon in support of his Administrative Expense Application, it appears to the Trustee that the amount of fees incurred by Gordon for the period from January 30, 2008 through February 16, 2011 is approximately $35,000, and this would be the maximum allowable compensation if it were determined that Gordon had successfully "recovered" for the benefit of the estate property transferred or concealed by the Debtor. Nevertheless, as set forth previously, (a) there was no "recovery" and hence no right to compensation and (b) any compensation must be reduced because of the subsequent year of litigation forced on the estate by Mohamad after the Superior Court's February 16, 2011 decision.

Finally, the Administrative Expense Motion requests that Gordon is entitled to fees "solely to be paid out of assets that he discovers and that are not currently known to the trustee." Gordon has not discovered any assets that were not known to the trustee as of January 30, 2008 (Gordon having promptly informed the Trustee of the Appeals Court decision in <u>Mohamad I</u> shortly after it came down). Therefore, per the terms of the motion, there are no funds with which to pay Gordon's request for administrative fees.

## IV. APPLICABLE LAW

A. <u>Section 503(b)(3)(B) and (b)(4)</u>

Section 503(b) provides in pertinent part the following:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including - - . . .

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-- . . .
>
> > (B) a creditor that recovers, after the court's approval, for the benefit of the estate *any property transferred or concealed by the debtor;* . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of

> paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. § 503(b)(3)(B), (b)(4).  The United States Bankruptcy Appellate Panel for the First Circuit In <u>Xifaras v. Morad (In re Morad)</u>, 328 B.R. 264 (B.A.P. 1st Cir. 2005), considered the appeal of the denial of a motion filed by Stella Xifaras in which she requested allowance of attorneys' fees and costs expended in the prosecution of  a state court fraudulent conveyance action in bankruptcy case of the debtor, Emile Morad,  under 11 U.S.C. § 503(b)(3).   As a direct consequence of Xifaras's successful prosecution of a fraudulent conveyance action, three property interests which the debtor had conveyed to family members became property of the bankruptcy estate and sold by the Chapter 7 trustee for significant amounts of money.  The panel observed that "[l]egal fees and costs incurred by a creditor are allowable as administrative expenses under § 503(b)(4) if the requesting entity is able to demonstrate a qualifying occurrence under § 503(b)(3), like the recovery of property under subparagraph (B) . . . ." 328 B.R. at 269.  The panel noted that Xifaras did not obtain bankruptcy court approval before the commencement of her action, although she argued that the "'after the court's approval' requirement in § 503(b)(3)(B) is not universally applicable and that it should not be a bar to her recovery of an administrative expense in this instance."  <u>Id.</u> at 270.

The panel stated:

There is no First Circuit authority directly on point. Those courts that have

examined the meaning of "after the court's approval" in § 503(b)(3)(B) are divided on the extent of its applicability. Some courts acknowledge prior approval to be the rule, but allow retroactive court approval under certain circumstances when a creditor's recovery of an asset is for the benefit of the estate. *See, e.g.*, In re Zedda, 169 B.R. 605, 607–608 (Bankr. E.D. La. 1994); In re Antar, 122 B.R. 788, 791 (Bankr.S.D.Fla.1990); *271 In re Johnson, 72 B.R. 115, 118 (Bankr. E.D.N.C. 1987); In re Rumpza, 54 B.R. 107 (Bankr.D.S.D.1985). Other courts reject post facto approval. *See, e.g.*, In re Blount, 276 B.R. 753, 758 (Bankr. M.D. La. 2002); In re Lagasse, 228 B.R. 223, 225 (Bankr. E.D. Ark. 1998); In re Fall, 93 B.R. 1003, 1012 (Bankr. D. Or. 1988); Lazar v. Casale (In re Casale), 27 B.R. 69, 70 (Bankr.E.D.N.Y.1983).

Morad, 328 B.R. at 270-71 (footnote omitted). The panel agreed with those courts requiring prior court approval, although it recognized that *post facto* approval could be approved under extraordinary circumstances in view of decision of the First Circuit in In re Jarvis, 53 F.3d 416, 418 (1st Cir. 1995).

The court in In re Streck, No. 03-11241, 2007 WL 1266426 (Bankr. D. Mass. April 26, 2007), considered an application by Attorney Gordon for the recovery of his fees and expenses for "his allegedly successful efforts in recovering monies wrongfully diverted by the debtor prior to bankruptcy." 2007 WL 1266426 at *1. The court concluded that Attorney Gordon had failed to demonstrate extraordinary circumstances for *post facto* employment, adding:

Even if I were to find extraordinary circumstances, I could not approve the Application because I reject Gordon's argument that his services were even necessary to the estate. Gordon points to the case of Pergament v. Maghazeh Family Trust et al. (In re Maghazeh), 315 B.R. 650 (Bankr. E.D.N.Y. 2004) for the proposition that courts have rewarded creditors who engaged in extensive discovery that benefitted the bankruptcy estate. In that case, the bankruptcy court awarded to the United States, the creditor therein, its fees and expenses where the actions of the creditor resulted in the recovery of a valuable asset for the estate, despite the lack of prior approval for the

28

creditor's services. 315 B.R. at 654. In <u>Maghazeh</u>, it was undisputed that but for the actions of the United States the assets the debtor hid would not have been uncovered for the benefit of creditors. <u>Id.</u> at 653.

<u>Streck</u>, 2007 WL 1266426 at *3.   The court added that Attorney Gordon had failed to

demonstrate that his services were necessary or beneficial to the estate because the Chapter

7 trustee dutifully administered the debtor's assets.

B. <u>Judicial Estoppel</u>

According to the United States Court of Appeals for the First Circuit in <u>Perry v.</u>

<u>Blum</u>, 629 F.3d 1 (1st Cir. 2010),

> The doctrine of judicial estoppel is equitable in nature. It operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding. <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 144 (1st Cir. 2003). The purpose of the doctrine is to protect the integrity of the judicial process. It is typically invoked when a litigant tries to play fast and loose with the courts. <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); <u>Alt. Sys. Concepts</u>, 374 F.3d at 33; <u>Patriot Cinemas, Inc. v. Gen. Cinemas Corp.</u>, 834 F.2d 208, 212 (1st Cir. 1987).
>
> The contours of judicial estoppel are hazy. But even though its elements cannot be reduced to a scientifically precise formula, <u>New Hampshire</u>, 532 U.S. at 750, 121 S.Ct. 1808, courts generally require the presence of three things before introducing the doctrine into a particular case. First, a party's earlier and later positions must be clearly inconsistent. <u>Id.</u>; <u>Alt. Sys. Concepts</u>, 374 F.3d at 33. Second, the party must have succeeded in persuading a court to accept the earlier position. <u>New Hampshire</u>, 532 U.S. at 750, 121 S.Ct. 1808; <u>Alt. Sys. Concepts</u>, 374 F.3d at 33. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court. <u>New Hampshire</u>, 532 U.S. at 751, 121 S.Ct. 1808; <u>Alt. Sys. Concepts</u>, 374 F.3d at 33.

<u>Perry</u>, 629 F.3d at *8.

C. <u>Promissory Estoppel</u>

"Under the doctrine of promissory estoppel in Massachusetts, '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Veranda Beach Club Ltd. P'ship v. Western Sur. Co., 936 F.2d 1364, 1380 (1st Cir.1991) (quoting McAndrew v. School Comm. of Cambridge, 20 Mass.App.Ct. 356, 480 N.E.2d 327, 332 (Mass.1985)). See also Steinke v. Sungard Fin. Sys., Inc., 121 F.3d 763, 776 (1st Cir.1997); Restatement (Second) of Contracts § 90.  In Lacey v. BAC Home Loans Serv., LP (In re Lacey), 480 B.R. 13 Bankr. D. Mass. 2012), this Court noted that "[u]nder Massachusetts law, an action based on reliance, such as promissory estoppel, 'is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration.'" 480 B.R. at 43 n.34 (quoting Tharpe v. Cisco Sys., Inc., No. 07–12279, 2008 WL 687416 (D. Mass. Feb. 14, 2008) (footnotes omitted, citation omitted)).

D. Unjust Enrichment

In Salamon v. Terra, 394 Mass. 857 (1985), a case cited by Attorney Gordon, the Supreme Judicial Court stated:

 [Q]uasi contract or a contract implied in law is an obligation created by law "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. . . . [C]onsiderations of equity and morality play a large part . . . in constructing a quasi-contract. . . ." 1 A. Corbin, Contracts § 19 (1963). It "is not really a contract, but a legal obligation closely akin to a duty to make restitution." Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.C. Cir. 1973). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution, § 1 (1937). The underlying basis for awarding quantum meruit

30

damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party. *See* U.S. Controls Corp. v. Windle, 509 F.2d 909, 912 (7th Cir. 1975); 1 A. Corbin, Contracts § 19A (Kaufman Supp.1984). The Appellate Division stated the rule as follows: "The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations." See 1 A. Corbin, Contracts, *supra.*

Salamon, 394 Mass. at 859.

## V. DISCUSSION

With respect to Attorney Gordon's Assented to Motion and Application, the Court grants the Assented to Motion in part and approves the Application in part.  The Court shall consider Attorney Gordon's entitlement to fees under § 503(b)(3)(B) and (b)(4) from December 23, 2008  through February 16, 2011.  Attorney Gordon is not entitled to fees prior to the filing of the Assented to Motion or after the decision of the Superior Court pursuant to which the estate obtained a significant portion of the $235,000 deposited by Landsman in the Clerk's Office of the Worcester Superior Court.  Attorney Gordon's fees and costs incurred after that date conferred no benefit on the bankruptcy estate.

As the court noted in Streck, the burden of proving entitlement to an administrative expense rests on the applicant.  2007 WL 1266426 at *3.  Although Attorney Gordon has asserted a number of theories why the Trustee should not be permitted to oppose the Assented to Motion and the Application, the Court rejects those theories.  The Court is not bound by any legal theories that would estop the Trustee from objecting to the Assented to Motion or the Application as the Court has an independent obligation to determine whether Attorney Gordon satisfied the requirements of 11 U.S.C. § 503(b)(3)(B) and (b)(4),

31

and whether his fees are reasonable.  As the court noted in In re Melendez, 235 B.R. 173

(Bankr. D. Mass. 1999),

> [The] Bankruptcy Courts have jurisdiction to ensure compliance with the
> Bankruptcy Code during the administration of a case. *See* 11 U.S.C. § 105. The
> Court may, *sua sponte*, "tak[e] any action or mak[e] any determination
> necessary or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process." Id. Thus, where a statute establishes certain
> predicates to an action and those predicates have not been established, a
> bankruptcy court has the independent authority to ensure compliance with
> the statutory requirements. Matter of Spivey, 230 B.R. 484, 490 (Bankr.
> E.D.N.Y. 1999).

Melendez, 235 B.R. at 188.  Accordingly, regardless of whether the Trustee may have given

Attorney Gordon the impression that he would be compensated from estate funds, this

Court has an independent duty to ensure that the Application comports with § 503(b)(3)(B)

and (b)(4).  Moreover, with respect to Attorney Gordon's theory of judicial estoppel, the

Trustee is not judicially estopped from opposing the Assented to Motion or the

Application.  The Trustee assented to Attorney Gordon's January 30, 2008 motion, but did

not appear at the hearing.   The Trustee's assent was limited to the payment of

compensation that both benefitted the bankruptcy estate and could be paid "solely out of

assets that he [Attorney Gordon] discovers and are not currently known to the Trustee."

Moreover, when the Assented to Motion was filed on January 30, 2008, the Trustee was

already aware of the contempt complaint pending in Superior Court as a result of the

Motion for Instructions which Attorney Gordon filed seven months earlier on June 4,

2007.[14]  In addition, in the Assented to Motion, Attorney Gordon disclosed the Appeals

Court decision reversing the Superior Court's decision to dismiss the contempt complaints

against Landsman and others "regarding the payment of the proceeds of the sale of the 671

Main Street  real estate."

The other theories advanced by Attorney Gordon, promissory estoppel and unjust

enrichment implicate the law of contracts and quasi contracts.  There is no evidence in the

existing record that the Trustee promised Attorney Gordon that he would be paid from the

bankruptcy estate or that the Trustee would not oppose payment.  The Trustee could not

make such a promise and had he done so it would be unenforceable absent court authority.

In view of the parameters of the two doctrines discussed above, this Court rejects those

theories and, accordingly, shall consider the Trustee's Opposition in part.

The Court sustains the Trustee's Opposition in part.  Attorney Gordon is not entitled

to any fees prior to January 30, 2008.  Indeed, because Attorney Gordon was awarded his

legal fees and costs by the Superior Court on December 23, 2008, he has not established

entitlement to any fees prior to that date. As the Trustee recognized, Attorney Gordon, in

the Assented to Motion, did not request *post facto* approval for an award of an

administrative expense, and did not demonstrate that his delay in seeking court approval

involved extraordinary circumstances.  *See* In re Jarvis, 53 F.3d at 418; In re Morad, 328 B.R.

271.

---

[14] Attorney Gordon attached to the Motion for Instruction a "Renewed
Complaint for Civil Contempt Pursuant to Rule 65.3" containing the docket number of
the case in which Mohamad also filed a contempt complaint against Landsman.

With respect to the provisions of 11 U.S.C. § 503(b)(3) and (b)(4), it was incumbent upon Attorney Gordon to demonstrate that Mohamad recovered, for the benefit of the estate, "property . . . concealed by the debtor."[15]  Accordingly, this Court must determine the nature of the property the Debtor concealed.

The Debtor did not disclose the Driveway Auto mortgage which Landsman assigned to him on his Schedules or Statement of Financial Affairs, but the property securing that mortgage had been sold on November 19, 2004 prior to the filing of the Debtor's bankruptcy petition, following the Debtor's default.  The sale occurred despite the Superior Court's order of June 1, 2004 and after the filing of a second reach and apply motion filed by Mohamad on November 16, 2004, pursuant to which Mohamad sought to apply the proceeds of the Driveway Auto mortgage to satisfy his judgment.  The sum of $235,000, which represented the proceeds of the sale of the property attributable to the Driveway Auto mortgage, which Landsman had assigned to the Debtor, were deposited with the Clerk of the Superior Court on or around October 8, 2008, approximately eight months after Attorney Gordon filed the Assented to Motion and almost two and a half years after the Debtor commenced his Chapter 7 case.  Because the so-called assignment back of the Driveway Auto mortgage from Kavlakian to Landsman violated the order of the Superior Court, the Debtor as the holder of the mortgage prior to the entry of the order was the holder of an interest in the proceeds of that mortgage at the commencement of the case.  In addition, Landsman held a claim against the Debtor at the commencement of the

---

[15] There has been no allegation that the Debtor transferred property.

34

case arising out of the note executed by Kavlakian on December 31, 2002. Landsman was
not listed as a creditor in the Debtor's Schedules.

Although Attorney Gordon filed the Assented to Motion prior to the trial of the
contempt complaint against Landsman, and did not obtain a Court order granting the
Motion, he continued to prosecute the contempt complaint and associated appeals. As
noted above, Attorney Gordon was compensated by the Superior Court for his efforts with
respect to prosecution of the contempt complaint against Landsman, which was initially
commenced on January 6, 2005, by an award of fees and costs on December 23, 2008.
Accordingly, this Court reiterates that Attorney Gordon can recover fees and costs only
after December 23, 2008.

Although the Superior Court indicated in its October 10, 2008 decision, *see* 2008 WL
4926166 at *7, that "[t]he amount due Mohamad from any escrow as of November 24, 2004,
the date of Landsman's contempt, was the (single, not double) full amount stated in the
Execution(s), plus postjudgment interest on the Execution(s) amount, at the statutory per
diem rate as of that date," Attorney Gordon rendered legal services thereafter arguing that
there were two executions, one against Kavlakian personally and one against him in his
capacity as trustee; and that the $184,491.39 payment received from Landsman was a
contempt judgment and that he was entitled to the full amount of the original default
judgment from the $235,000. Those arguments were deferred, however, until resolution
of Landsman's appeal from the decision of the Superior Court adjudging him in contempt.
The Appeals Court affirmed the contempt judgment on March 16, 2010. *See* Mohamad v.

Kavlakian, 76 Mass. App. Ct. 1119 (2010), aff'g, 2008 WL 4926166 (Mass. Super. October 10, 2008). The Appeals Court, in addition to considering Landsman's appeal, also considered Mohamad's cross appeal from the Superior Court's refusal to hold other parties in contempt, and an appeal from the amount of the contempt judgment entered against Landsman. Thus, Attorney Gordon is not entitled to any fees other than those associated with the defense of Landsman's appeal with respect to the contempt judgment. The fees associated with the cross appeals provided no benefit to the estate. See Mohamad v. Kavlakian, 76 Mass. App. Ct. 1119, 2010 WL 909911 (March 16, 2010).

Following the Appeals Court's decision of March 16, 2010, Attorney Gordon filed, on May 14, 2010, the Assented to Motion for Order Granting Relief from Automatic Stay, Re: $235,000 Held by the Worcester County Superior Court Clerk's Office. In that Motion, he sought an order from this Court directing the Clerk of the Worcester Superior Court to issue him a check in the sum of $181,278.60 plus interest at the rate of $51.45 per day, although at the time Landsman had paid Mohamad in full. Following the allowance of that Motion, the Superior Court, on February 16, 2011, issued its decision, later affirmed by the Appeals Court, as to the distribution of the $235,000. See Mohamad v. Kavlakian, 82 Mass. App. Ct. 1105 (2012), aff'g, 2011 WL 1366658 (Mass. Super. Feb. 16, 2011). Under those circumstances, Attorney Gordon's entitlement to any compensation from the bankruptcy estate terminated on February 16, 2011, particularly where Mohamad had been paid, in full, prior to the filing of the motion for relief from stay.

Although Mohamad did not recover funds and then disburse them directly to the

36

Trustee, the Court credits Attorney Gordon with defending Landsman's appeal and obtaining the February 16, 2011 decision of the Superior Court that culminated in a substantial benefit to the bankruptcy estate. Under those circumstances, Attorney Gordon is entitled to reimbursement of his reasonable fees and expenses between January 2009 and February 16, 2011, to the extent that the fees relate to the $235,000 deposited in Worcester Superior Court Clerk's Office, particularly where the Debtor did not disclose the asset or list Landsman as a creditor. In this regard, the Court rejects the Debtor's argument that Attorney Gordon and Mohamad were motivated by self-interest. Where the Debtor failed to honestly and completely disclose his assets and liabilities, he has unclean hands and is not in a position to advance the estate's interests.

Although Attorney Gordon did not make a payment to the Trustee, his efforts in the state court conferred a benefit to the estate. Had he ceased performing legal services, the estate would not have obtained a significant portion of the $235,000 fund. The Court shall not interpret the phrase in § 503(b)(3)(B), "a creditor recovers . . . ," to exclude reimbursement where the recovery does not directly come from the creditor, but is nevertheless the result of the creditor's efforts. Moreover, the Court rejects the Trustee's contention that Attorney Gordon is not entitled to any fees simply because the Trustee became aware of the asset before January 30, 2008. There can be no dispute that the Debtor concealed assets, that the Trustee relied, at least in part, upon the services of Attorney Gordon, and that the Trustee undertook no substantial efforts to obtain a portion of the $235,000 until after the decision of the Superior Court on February 16, 2011. Principles of

37

fairness warrant recognition of Attorney Gordon's services. To rule otherwise would result in a windfall to the estate.

The time sheets attached to Attorney Gordon's Application are insufficient for this Court to determine with precision the services  he performed which may have benefitted the estate.  The time sheets contain entries relating to the Debtor's bankruptcy case, as well as numerous matters unrelated to the contempt action against Landsman and the ultimate disposition of the $235,000 which were deposited by Landsman in the Clerk's Office of the Worcester Superior Court due to Attorney Gordon's services.  Moreover, many of the entries are cryptic and lack the specificity which would enable the Court to discern whether services benefitted the estate.

The time entries between January 2009 and February 16, 2010 total 111 hours for which Attorney Gordon charged $300 per hour, for a total of $33,300.  Included within that sum are fees relating to 1) the cross appeal  of those parties which the Superior Court refused to hold in contempt;  and 2) Mohamad's appeal of the amount of the contempt judgment, none of which benefitted the estate.  Accounting for those entries and the lack of specificity as to the actual services rendered, the Court concludes that the sum requested by  Attorney Gordon, namely $24,365, plus expenses  of $2,643.29, is sufficiently accurate to permit an award.

The Court takes judicial notice that proofs of claim filed in the Debtor's Chapter 7 case  total  $19,645.91,  excluding  the  tardily  filed  claim  of  Landsman  in  the  sum  of

38

$333,993.69.[16]  As noted above, the Trustee represented that he is holding approximately $190,000, and the Debtor's discharge has been denied.  Accordingly, where Attorney Gordon's services conferred some benefit to the estate, allowance of fees and reimbursement of expenses in the amount of $27,008.29 is warranted pursuant to § 503(b)(3)(B) and (b)(4) under the complex and unique circumstances of this case.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Assented to Motion in part and approving the Application in part, such that Attorney Gordon shall have a total administrative claim in the sum of $27,008.29 and shall have no other claim against the estate.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June 3, 2013

---

[16] On August 26, 2010, this Court ruled that Landsman could file an unsecured claim "which may be entitled to distribution, if any, as a tardily filed unsecured claim under 11 U.S.C. § 726(a)(3)."

39